Mr. Branch. Yes, good morning. May it please the court. This is a petition for review of an MSPB decision. I'm David Branch. I represent Michael Snowden. Snowden was an officer with the U.S. Park Service and there are four issues that we want to raise in this appeal. The first issue is that the board found that the last chance agreement was not valid and binding because it was not signed by all parties. There was also an issue of waiver, whether the last chance agreement wasn't valid because it required Mr. Snowden to waive his rights to challenge an agency determination that he breached the last chance agreement. The next issue is the extrinsic evidence issue. The board considered extrinsic evidence in finding that the last chance agreement was valid. And the fourth issue is the board failed or the administrative judge failed to permit us to take depositions of key witnesses after they submitted statements before the hearing and struck our request for a particular witness at the hearing. Isn't the real issue whether the agency breached the agreement and whether it therefore was not valid? Well your honor, that is the first issue, whether the agency breached the agreement. But we also have the issue of whether we have a valid and binding agreement. The agreement was not signed by the Office of Professional Responsibility. Well it was signed by all parties at one point. Well your honor, actually it was signed by someone from the Office of Professional Responsibility as receiving the agreement. But it was not signed by the person, the director at the Office of Professional Responsibility. In fact, she was someone that we requested to be a witness at the hearing and the administrative judge denied that request to have, her name was Dinah Smith, have her participate in the hearing. But didn't the board find that the Office of Professional Responsibility was not an actual party to the agreement and what was important is that the parties executed it and all that was required was noticed to the office? And your honor, that's the problem with the extrinsic evidence. We have a last chance agreement that sets forth specifically the terms that the parties agreed to be bound by and it says that this agreement must be signed by the Office of Professional Responsibility. This action was taken against Mr. Snowden after an investigation by the Office of Professional Responsibility. It was referred to the U.S. Attorney's Office. So the agency drafted this last chance agreement and they specifically included in the last chance agreement that it needed to be signed by Mr. Snowden as well as the Chief of Park Police as well as the Office of Professional Responsibility. So if you're saying this LCA was invalid, where does that leave your client? Fired? Well, your honor, if the LCA is invalid, it places him back at the agency in the position, he was in the sergeant position, it places him back at the agency in the sergeant position. And he had a windfall in the meantime. Well, no, your honor, and that's another issue. The administrative judge believed or found or suspected that there was a windfall, but there was nothing in the record to support that. In fact, even though he was placed, he remained in the sergeant... But the LCA was supposed to alleviate his removal. Alleviate his removal, but he was placed in a private position, or he would have been placed in a private position. Now... Under the LCA. Under the LCA. But you're saying it was invalid because it wasn't signed by all the parties on the same page. Well, it was, your honor, it was invalid because it was not signed by all parties, but also required him to waive his right to claim any type of, to appeal any type of decision. Now, this evidence was... So you're saying now he can go back and appeal his removal free of the LCA. He can appeal his removal, but he's not restored to... The LCA said he's just demoted, right? The LCA would demote him. Well, when you say removal, are you saying removal from the service or removal from the sergeant's position? Because if he was placed in this private position, there's a possibility that he would have earned more money as a private by working and getting overtime. But the administrative judge took the position that he remained in the sergeant's position and he somehow received some type of benefit. Well, I thought he was proposed to be removed from his position as a sergeant. Does that mean fired from the agency? There was a proposal to remove him from the agency. And the LCA moderated that, ameliorated that by giving him just a demotion. And you're trying to eliminate the LCA and validate it on a technicality. So now he's in a state of removal. What we're trying to do is get the agency to comply with the terms of the last chance agreement. The last chance agreement says he was to be demoted. The agency did not take any action for almost two years on that particular issue. But the agreement was not signed as well by the parties to the agreement. Now you've got me completely confused. So what is it that you're asking for in terms of relief? I think what Judge Luria is saying is if you're saying that the last chance agreement is completely invalid, then that would put the parties back to where they were before the last chance agreement, which is that he's facing a termination. He's facing a proposal to remove him. A decision has not been made to remove Mr. Snow. And is that what you're asking us to say, that that's where he should be? He should be back in the position where he started the process. And if the last chance agreement is not valid, then basically everything should be returned to the status quo. And they can take whatever action they believe is appropriate at this time. But now we're seven years away from the actions involved here. Right, and that's part of the problem. So he's continued to work, correct? No, he hasn't worked. He was actually terminated. Well, that was after the fact. Yes, terminated in 2011. Okay. But in that interim period, he continued to receive income. And for several of those years, he actually continued to receive it at the higher level that he wasn't supposed to get under the last chance agreement. Well, but that's an issue that hasn't been developed in the record. When you say at a higher level, it was a higher grade, but it didn't necessarily translate into a higher level of compensation. Because as a sergeant, his salary was at one level. As a private, his salary may have been at a lower level, but he would have been eligible for things like overtime and things that would have given him additional compensation. The issue that we also raise is that the last chance agreement requires him to waive any right to challenge any of these events for discriminatory reasons. It's statutory rights as well as constitutional rights. Everything is waived. Don't virtually all LCA agreements do that? Your Honor, I don't think that all LCA agreements require parties in court. And of course, there's authorities to support this. We cite it in our brief. Well, that's usually the deal. We're going to give you something here, but you waive your right to appeal. Waive your right to challenge maybe one aspect of it, but not further actions or actions in the future. And I think one of the courts specifically said an employee does not have the right to bargain away someone's right to file a claim of discrimination. So, for example… But you're not saying he had a claim of discrimination here. You're just saying that somehow that infects the whole agreement? Well, no. I mean, part of his claim before the MFPB is that the action taken against him was discriminatory because officers who engaged in more egregious conduct did not face the same type of discipline. But even if that provision is not enforceable, that doesn't wipe out the entire agreement. Doesn't the agreement itself contain a clause that says if any individual provision here is deemed to be unenforceable or invalid, that the rest of the agreement is separable? There is a provision in the agreement that says that, but that's not the entirety of the agreement. I mean, a major part of the agreement was that clause. But to the extent that it included, for instance, the waiver of a right to assert a claim of discrimination, that was never asserted against him. I mean, the agency never attempted to enforce that provision against him, did it? By what? Preventing him from filing a discrimination claim? Yes. Okay. Mr. Snowden raised issues of discrimination both with this demotion as well as later when they attempted to remove him. He raised issues of discrimination, and the agency took the position that under the last chance agreement, you waived any claim to challenge this, to challenge the action being taken against you. Well, as it relates to the 2011, that is not an issue that can be before us because that's not in the record. Well, we referenced in the, I guess, the opening part of the brief that this action is outstanding and is currently before the board. And the board improperly considered extrinsic evidence. While excluding Mr. Snowden from presenting evidence through the director of the Office of Professional Responsibility, the board permitted this extrinsic evidence to come in through the testimony of someone from the Office of Professional Responsibility and the chief of police on how the agency has interpreted last chance agreements. Completely improper violation of the parole evidence rule. We have a last chance agreement that sets forth what the terms are. You can't bring in evidence from some other source to interpret what this last chance agreement meant, what the terms meant. And Mr. Snowden's position was that we have this last chance agreement. This is binding on the parties, but it's invalid. And the agency took the position, well, we don't have to have OHOPR sign this and presented evidence and the administrative judge permitted the agency to present that evidence. But the administrative judge excluded Mr. Snowden from calling as a witness Diana Smith, the OPR director at the time. The agency also, and that's part of the claims, the agency abused its discretion in the pre-hearing rulings when we requested to depose these individuals before the hearing. They submitted affidavits after the case was remanded by the board the first time where they specifically provided information on how this last chance agreement was signed or why it was not signed. We requested an opportunity to depose these people before the hearing. The administrative judge denied that request. As a result, they were permitted to testify at the hearing and we had to develop whatever response that we had to these individuals during the course of the hearing while these folks were testifying instead of getting all this information on the record so that Mr. Snowden could present his claims in response to this proposal. Have you done any research to see how often we've reversed an AJ's decision to exclude or include a witness? Your Honor, I know that it's rare, but I think this should fall in the case of that small percentage of cases. Would you like to save your rebuttal time, Mr. Snowden? I will, Your Honor. Okay, thank you very much. Ms. Milberg. May it please the court. This court should affirm the board's decision because it is not arbitrary, capricious, unsupported by substantial evidence, or contrary to law. The board correctly found that the Department of the Interior and Mr. Snowden entered into a valid last chance agreement, that Interior did not violate the last chance agreement, and that the board does not have jurisdiction over an appeal of the original removal action because the last chance agreement contains a valid waiver of Mr. Snowden's right to appeal the original removal to the board. Did the agency comply with all the terms of the LCA? Yes, Your Honor. Interior did comply with the last chance agreement. In fact, had Interior not complied with the agreement, Mr. Snowden would be removed. As this court pointed out, the last chance agreement offered Mr. Snowden an opportunity to not be removed. So the agency didn't demote him as they were supposed to. Interior also did not remove Mr. Snowden. It abided by the last chance agreement and demoted him. While Interior did demote Mr. Snowden nearly two years after entering into the last chance agreement, Mr. Snowden incurred a windfall from this. In fact, he earned $16,000 extra dollars to which he was not entitled. But when you say he wasn't entitled, he continued to act, though, in the alternative capacity, right? In the superior capacity, correct? He continued to... People did still call him sergeant, but he was not, in fact, a sergeant. What do you mean he was not, in fact? If he hadn't been demoted... Oh, if he hadn't been... So he wasn't demoted, he continued in his sergeant capacity, continued as a sergeant salary. Now, the notion that it's a windfall when he continues to act in that position and continues to perform those jobs is a little difficult to understand. He wasn't serving in a sergeant capacity, although other employees did call him sergeant. He did incur a work-related injury at the time that prevented him from performing the duties he had previously... What's the difference in work between a sergeant and a private? Issuing instructions to privates, if he's a sergeant? I'm not exactly sure of the difference, although I know that Mr. Snowden had previously served on the secretary's security detail, and he no longer did that after being demoted. So you're saying he didn't perform in the position of a sergeant, even if he was paid as such. That's correct. I'm confused. So, this is now the second time in this argument that I'm confused here, but you're saying that during the two-year period where you didn't carry out the demotion, are you saying he didn't work at all? Mr. Snowden did work, but he did not have the previous job responsibilities he once had. And you're saying that was due to a work-related injury? That was due to the last-chance agreement, as well as a work-related injury. Is it normal not to give an employee a copy of their own last-chance agreement? I do not know what the Department of the Interior's practice is, but Mr. Snowden did sit only 20 feet from the Office of Professional Responsibility and could have requested a copy, or when he himself signed it, could have asked to make a copy. Given all of these circumstances, have they gotten better about actually providing copies to employees? I'm not sure on the future practice of the Department of the Interior after this appeal. Has that been an appealed issue, the failure to provide a copy of the agreement? I have not seen any precedent addressing that issue, nor would it... No, but that's not what your opponent, Mr. Branch, is raising. Is that right? That's correct. Mr. Snowden is not appealing whether a failure to receive a copy invalidated the agreement. And as the Board and the Administrative Judge noted, the fact that Mr. Snowden did not receive a copy did not bear on the validity of the last-chance agreement. The Board also noted that a delay in effectuating a single term of the agreement did not invalidate the agreement. And any allegation by Mr. Snowden that the failure to timely demote him extended the length of the agreement is also incorrect. In fact, Mr. Snowden was only demoted for a little over a year, and before the expiration of the duration of the last-chance agreement, Mr. Snowden was terminated from the Department of the Interior. Also, contrary to what Mr. Snowden's counsel represented, it was not a proposal to remove Mr. Snowden in August 2008. There was an original removal decision letter, which came from the Chief of the Park Police. It did not come from the Office of Professional Responsibility. Well, what about the overly broad waiver clause? I mean, there is a lot of case law that says that you can't require someone in a last-chance agreement to waive the right to bring a discrimination claim. Now, how do you get around the fact that that provision was an improper provision in the agreement? The provision in the agreement was not improper. Here, the only thing Mr. Snowden waived pursuant to Provision 15 of the last-chance agreement was the ability to appeal the original removal action. And as this court pointed out, Mr. Snowden is not bringing a discrimination claim here. That's not before this court. This agreement did nothing to stop Mr. Snowden from challenging whether he violated the last-chance agreement, such that it would reinstate the original removal, or whether the Department of the Interior violated the last-chance agreement. Mr. Snowden did not waive any of those rights by signing this agreement. All he waived was the ability to challenge the original removal action, which is how these last-chance agreements work. Regarding Mr. Snowden's allegations that the administrative judge abused his discretion during the discovery process, the administrative judge did not abuse his discretion. There was no prejudice to Mr. Snowden. Contrary to what Mr. Snowden has alleged, Mr. Snowden never requested to depose the witness that he mentioned, or even mentioned her during discovery. It was not until the hearing that Mr. Snowden put her on the witness list and said that she could testify. After the Department of the Interior opposed this witness, Mr. Snowden could not explain why the witness's testimony would be different than any other of the witness's testimony. The judge denied her as a witness because she was irrelevant, immaterial, and duplicative of other testimony. The administrative judge here did not abuse his discretion in denying Mr. Snowden the opportunity after discovery to depose that witness. As the board correctly found, the Department of the Interior did not violate the last-chance agreement. The administrative judge concluded there is a valid enforceable agreement and that Interior did not breach it, such that there was no jurisdiction for the board to hear Mr. Snowden's appeal. We would respectfully request that this court affirm the board's decision. Thank you very much. Mr. Branch? First, with respect to the witnesses, there were actually three witnesses that were in question. We asked to depose Ms. Payton and Chief Laurel before the hearing, and the other witness was Diana Smith, the director of OPR.  The request to depose the agency witnesses was denied by the administrative judge, and the request to allow Diana Smith to testify was denied, or she was stricken as a witness. The action of the agency actually extended the last-chance agreement with respect to Mr. Snowden for the demotion. He agreed for this whole matter to be done within three years. The agency delayed taking any action to demote him for two years. So when they demoted him in 2010, his demotion would have extended an additional three years, which violated the last-chance agreement. So the agency did extend the last-chance agreement. Mr. Snowden was not given a copy of the last-chance agreement, and we raised that as an issue. We raised the fact that he signed this last-chance agreement in 2008, and he didn't hear anything from the agency until June 2010, when he was demoted. And then at that time, he was given a copy of the last-chance agreement. We raised it from the time he was given the demotion throughout the proceedings. That was one of the reasons. He did get a copy of it. He received a copy of the last-chance agreement signed by Mr. Snowden and the chief only, not all three parties, but Mr. Snowden and the chief in June 2010. He didn't get a copy of the last-chance agreement at any point signed by everybody, and that was the first time that he received a last-chance agreement. Do you have a final thought for us, Mr. Branch? It's our position that the last-chance agreement is invalid. It's not binding. It wasn't signed, not executed. The waiver issue is an issue, a serious issue. They required him to waive everything, and I'm reading from the last-chance agreement. It says he waives any and all rights to challenge, grieve, litigate, complain, or appeal any disciplinary action. That says 68. It's far beyond what's been permitted by the statute. Thank you, Mr. Branch.